See, also, 229 F.Supp. 259, 231 F. Supp. 519, 240 F.Supp. 290.

**In re CERTAIN CARRIERS REPRESENTED BY the EASTERN, WESTERN AND SOUTHEASTERN CARRIERS' CONFERENCE COMMITTEES, and Certain of Their Employees Represented by the Brotherhood of Locomotive Engineers, Brotherhood of Locomotive Firemen and Enginemen, Order of Railway Conductors and Brakemen, Brotherhood of Railroad Trainmen, and the Switchmen's Union of North America.**

**Misc. No. 41-63.**

United States District Court
District of Columbia.
June 7, 1965.

Francis M. Shea and Richard T. Conway, Washington, D. C., for the Carrier Southern Pacific Railroad.

Milton Kramer, Washington, D. C., and Russell B. Day, Cleveland, Ohio, for Brotherhood of Locomotive Firemen and Enginemen.

HOLTZOFF, District Judge.

This is an application by the Brotherhood of Locomotive Firemen and Enginemen for supplemental relief in connection with the order of this Court sustaining the award made by the special statutory Arbitration Board and an injunction issued by this Court for the purpose of implementing and carrying out the award that it had approved.

It seems desirable to place this application in its proper posture and to review very briefly the setting in which it is found. To avoid the threat of a nation-wide railroad strike the Congress, on August 28, 1963, by Public Law 88–108, 77 Stat. 132, created a special Arbitration Board to resolve the two main issues in dispute between brotherhoods representing railroad employees and railroad companies. Two questions were referred to the Board by the Congress. One was the status of firemen-helpers on freight trains resulting from the substitution of Diesel power for steam power on railroads. The second was the size of train crews and the possibility of reduction of train crews as a result of technological improvements. The second aspect of the arbitration is not involved in the present application and will not be referred to in this decision.

As to the first aspect of the arbitration, the Board, in substance, held that on ninety per cent of freight trains, firemen were no longer necessary and performed no necessary function, since their activities could be conducted by the third man in the freight engine, namely, the head brakeman, who was ordinarily stationed there. The Board, however, provided that the firemen who were then employed should receive certain security. Those who had been employed for ten years or more were to retain their positions and their status permanently until they died, resigned or retired, or were discharged for cause. Those who had between two and ten years' experience received the same security, with the limitation that they might be offered comparable employment by the railroads, and if they refused to accept such comparable employment they could be severed from their positions. Those who had less than two years' experience were accorded no security, but were to be given severance pay.

Following the rendering of the decision of the Board, as has been stated, an action was brought in this Court to impeach the award. This action resulted in an order affirming its validity. Subsequently, upon the application of the railroad companies, in order to implement and enforce the award, the Court issued an injunction to restrain the railroad brotherhoods from instigating or calling a strike in protest against the application of any of the provisions of the award.

It must be borne in mind that the Court, in issuing an injunction, has the power to modify it from time to time and adjust it to the necessities of a shifting situation. The Court reserved the right to the parties to make applications at the foot of the decree. The application now before the Court is in the last mentioned status. It presents two problems.

A number of employees, 79 in the aggregate, of the Southern Pacific Railroad, were offered comparable positions under the award and refused to accept them. The result was that their employment was terminated and they received severance pay. There was a question in dispute whether in offering comparable jobs a railroad had a right to offer a number of jobs to a number of employees simultaneously, or whether it had to make an offer to the junior employee first and after that offer was disposed of, to proceed to the next junior and so forth. The second method would necessarily have resulted in prolonging by some days or weeks or more the term of employment of a person who declined to accept a comparable job and whose employment was thereupon terminated.

This question was referred to the Board of Arbitration, which had the power under the statute to reconvene from time to time in order to interpret and construe its award. The Board determined this question in favor of the employees; in other words, that a railroad may not, under the basic award, make offers of a number of jobs to a number of employees simultaneously, but had to proceed with one employee at a time, beginning with the most junior employee on the list. It is claimed that as a result of the decision of the Board the 79 employees whose employment had been terminated under the employer's construction of the award are entitled to additional pay for the additional period during which they would have worked had the interpretation of the Board been applied to them in the first instance. The Railroad Brotherhood asks this Court to adjudicate these individual claims. The Railroad objects.

The Court is going to repeat what it said on a previous occasion in the same litigation, 240 F.Supp. 290, 291:

"It must be borne in mind, however, that while this Court may implement the award and compel compliance with it by orders such as have been indicated, it does not follow that this Court would have jurisdiction or would undertake the disposition of individual disputes between individual employees and the employing carriers. Disputes of that type are minor disputes to be determined locally."

■ The Court might add that the employees are not before the Court. The Court knows of no way in which they could be brought in unless they file individual intervening petitions. The Court, moreover, is of the opinion that to pass upon these claims individually would be undesirable and it would decline to do so on the principle of *forum non conveniens*.

■ The Court has, however, the right to annex conditions to the continuation of its injunction, and on that theory it will make a ruling as to the substantive rights of these 79 employees by analogy to an interlocutory judgment, and then leave to a local tribunal the adjustment and computation of individual claims. The Court is of the opinion and so rules, that the employees in question are entitled to be paid compensation that they would have earned had the Railroad proceeded and had their employment been terminated in the manner indicated in the construction of the award as recently rendered by the Board. The Court further holds that these employees have not waived their rights by accepting severance pay and failing to protest at a time when they could not have known how the Board would eventually rule upon the question in dispute. On the other hand, the Railroad is entitled to credit on each individual claim for any wages that might have been earned by the claimant during the period for which under the recent construction of the award he should have been retained in his employment by the Railroad. The Court will refer the determination of each claim, in accordance with these principles, either to the Special Adjustment Board heretofore created by the parties in the area in which the Railroad operates, or to some other tribunal of a local character on which the parties can agree, in the event

that there is objection to referring the matter to the Special Adjustment Board.

The Court has given due consideration to the decision of the Supreme Court in Republic Steel Corp. v. Maddox, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580, which held that contract grievance procedure should be followed in connection with claims for severance pay under collective bargaining agreements subject to the Labor-Management Relations Act. The Court is of the opinion, however, that this case is not applicable. What the Court is doing here is, in effect, adding a condition on which its injunction shall be continued and is exercising its equity powers accordingly. The situation is entirely different, not only in fact but also in principle, from that presented in the case just referred to.

The second aspect of the motion made by the Brotherhood is to require the Southern Pacific Railroad to call men from the extra list for jobs that have been abolished as a result of the process of attrition prescribed by the basic award of the Board. This question too has been referred to the Board for determination and construction, because the award is either ambiguous or silent upon this point. Unfortunately, the answer of the Board is both obscure and ambiguous. There seems to be a contradiction or at least an ambiguity between the answers rendered by the Board to questions 1(a), 1(b), 60(b) and 76, submitted by the parties.

The Court is of the opinion that it has no power to construe the award. It may only enforce it. The power of construing the award is vested by statute in the Board. The statute permits the Board to be reconvened from time to time for the purpose of construing the award. The Court will not render in favor of the Brotherhood any relief on this aspect of the matter and will deny the application to that extent, without prejudice to either party resubmitting the question to the Board for clarification and thereafter resubmitting it to the Court.

The Court wishes to say that is observations are not to be taken as a criticism of the Board. The Board has performed a difficult and intricate task in a superb manner. It so happens that among the many aspects of its activities this ambiguity arises.

You may submit a proposed order in accordance with this decision.